OPINION
{¶ 1} Monte J. Gist appeals from his conviction and sentence in Montgomery County Common Pleas Court on charges of aggravated murder and aggravated burglary with accompanying firearm specifications.
 {¶ 2} Gist advances four assignments of error on appeal. First, he contends his convictions are against the manifest weight of the evidence and are based on legally *Page 2 
insufficient evidence. Second, he claims the trial court sentenced him in violation of Blakely v. Washington (2004), 542 U.S. 296, andState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. Third, he asserts that prosecutorial misconduct deprived him of his right to a fair trial. Fourth, he argues that the trial court erred in its instructions to the jury and also failed to require the prosecutor to "elect between offenses."
 {¶ 3} The present appeal stems from a drug-related shooting at the Parkside Inn, a Dayton-area motel. The incident occurred after the victim, Daniel Thomas, stole crack and powder cocaine, a pistol, and cash from Gist's mother's residence. Gist had allowed his friends, Jonathan Neely and George Billingsley, to sell drugs from the residence in exchange for a share of the profits.
 {¶ 4} After discovering the theft, Gist, Neely, and Billingsley determined that Thomas had committed the crime. They also discovered that he was staying at the Parkway Inn, a haven for drug dealers, addicts, and prostitutes. Upon arriving at the motel, Billingsley learned from Hope Hatton, a prostitute, that Thomas was staying in room 201. Hatton also told Billingsley that Thomas had crack and powder cocaine as well as a gun. Gist later arrived at the Parkway Inn and met with an individual named Eric Ross. Gist then located Hatton, who led the two men to Thomas' room on the second floor. When they reached Thomas' door, Gist and Ross took flanking positions on opposite sides of it. Thomas opened the door when Hatton knocked. Gist and Ross then rushed the door, and Thomas was fatally shot. At trial, the State presented testimony from two eye-witnesses, William Jones and Jessica Cartajena, who identified Gist as the shooter. In addition, three other witnesses, Keith Peoples, Margaret Jackson, and Kristie Thomas, testified that Gist later admitted killing Thomas. Gist testified in his *Page 3 
own defense and admitted being outside Thomas' door. But he denied shooting Thomas, having any knowledge that a shooting would occur, or making any admission that he had killed Thomas. The jury nevertheless found Gist guilty on two counts of aggravated murder and aggravated burglary with accompanying firearm specifications. The trial court merged the two aggravated murder counts and imposed a sentence of life in prison with parole eligibility after twenty years. The trial court likewise merged the two aggravated burglary counts and imposed a sentence of ten years in prison. The trial court also merged four firearm specifications and imposed an additional three-year sentence. Finally, the trial court ordered the foregoing sentences to be served consecutively, resulting in an aggregate sentence of life with parole eligibility after thirty-three years. This timely appeal followed.
 {¶ 5} In his first assignment of error, Gist challenges the weight and sufficiency of the evidence to sustain his convictions. In support of his manifest weight argument, Gist challenges the credibility of the prosecution witnesses who testified against him. He points out that the witnesses were drug addicts, dealers, and prostitutes. He also notes that a number of them had criminal records and had used drugs on the day in question. In addition, Gist asserts that some of the witnesses may have had a motive to testify against him and that others were unable to identify him from photo arrays. He also stresses the absence of scientific evidence, as well as the State's failure to locate George Billingsley or Eric Ross, who potentially could have provided additional information.
 {¶ 6} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and *Page 4 
all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 7} Having reviewed the record in this case, we do not find Gist's convictions to be against the manifest weight of the evidence. The essence of his argument, as set forth above, is that the State's witnesses lacked credibility for various reasons. Defense counsel brought these credibility issues to the attention of the jury, which took them into consideration and nevertheless elected to disbelieve Gist and to credit the State's theory of the case. In so doing, the jury was under no illusion regarding the character of the State's witnesses.
 {¶ 8} Although a weight-of-the-evidence argument permits a reviewing court to consider the credibility of witnesses, that review must be tempered by the principle that weight and credibility questions are primarily for the trier of fact. State v. Goldwire, Montgomery App. No. 19659, 2003-Ohio-6066, at]}13, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "`Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the *Page 5 
testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'" Id. at ]}14, quoting State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 9} With the foregoing principles in mind, and based on our review of the trial transcript, we believe the jury acted reasonably in crediting the State's version of events and finding Gist guilty. Having reviewed the record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against Gist's convictions.
 {¶ 10} In his challenge to the sufficiency of the evidence, Gist asserts that he was not the shooter and that the State failed to establish his awareness of a "plan to murder Daniel Thomas before the shooting occurred." According to Gist, he did not know that anyone had a gun or that a murder had been planned. Therefore, he contends the State presented legally insufficient evidence to prove that he aided or abetted in the aggravated murder or aggravated burglary.
 {¶ 11} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the *Page 6 
essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 12} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found Gist guilty of aggravated murder, aggravated burglary, and the firearm specification. The fact that Gist might not have been the shooter is largely immaterial because the State prosecuted him as an aider and abettor. To establish complicity by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v.Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus.
 {¶ 13} The record contains sufficient evidence, including eyewitness testimony, to support a finding that Gist aided and abetted in the aggravated murder and aggravated burglary. Even if Gist's companion Ross was the actual shooter, the State's evidence established, at a minimum, that he took a flanking position beside Thomas' door and forcibly entered the room when the shooting occurred. The State also presented evidence that Gist went to the Parkway Inn with knowledge that his companions intended to harm Thomas. Prior to the shooting, Gist told an acquaintance at the Parkway Inn that he was there "to take care of some business." In short, the record contains ample evidence to support Gist's convictions for aggravated burglary and aggravated murder on an aiding and abetting theory. This is true even if, as Gist argues, there was no preexisting plan to murder Thomas. The State did not charge Gist with aggravated murder by prior calculation and design. It charged him with aggravated *Page 7 
murder based on a killing in the course of an aggravated burglary. Finally, we note that Gist's firearm specification was appropriate even if he only aided and abetted the actual shooter. See, e.g., State v.Chapman (1986), 21 Ohio St.3d 41; State v. Rhubert (Oct. 12, 2001), Greene App. No. 2001 CA 62. Gist's first assignment of error is overruled.
 {¶ 14} In his second assignment of error, Gist claims the trial court sentenced him in violation of Blakely v. Washington (2004),542 U.S. 296, and State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. Gist argues that the trial court violated Blakely and Foster by making the factual findings necessary to impose a maximum sentence for aggravated burglary and to run his sentences consecutively. In response, the State asserts that Gist failed to object to his sentence on Sixth Amendment grounds and, therefore, waived any error.
 {¶ 15} Upon review, we find the Ohio Supreme Court's recent ruling inState v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, to be dispositive. In Payne, the majority held that a defendant's failure to object to judicial fact-finding at sentencing forfeits the issue for appeal if the sentencing occurred after Blakely was decided. Id. at ]}31. In the present case, Gist was sentenced after Blakely and did not raise an objection to judicial fact-finding at sentencing. Therefore, he forfeited the issue for appellate purposes. Although plain-error analysis remains available, a trial court's violation ofBlakely and Foster does not constitute plain error under Crim.R. 52(B). Id. at]}25-26. Accordingly, we overrule Gist's second assignment of error.
 {¶ 16} In his third assignment of error, Gist asserts that prosecutorial misconduct deprived him of his right to a fair trial. In particular, he contends the prosecutor made two improper statements during closing argument. To prevail on his prosecutorial *Page 8 
misconduct claim, Gist must show that the prosecutor's conduct was improper and that it prejudiced his substantial rights. State v.Kelly, Greene App. No. 2004-CA-20, 2005-Ohio-305,1} 18. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Cornwell, 86 Ohio St.3d 560, 570-571,1999-Ohio-125, quoting Smith v. Phillips (1982), 455 U.S. 209.
 {¶ 17} In the first statement at issue, the prosecutor told the jury: "If you want to totally disregard all those [prosecution] witnesses that came in here, then you're doing a disservice because you aren't sticking to your oath." The trial court overruled defense counsel's objection to the statement, which Gist asserts invaded the province of the jury. Upon review, we agree that the prosecutor should not have made the statement. The jury had a right, consistent with its oath, to disregard all of the testimony presented by the State's witnesses if it found the testimony to be lacking in credibility. Therefore, an assertion that the jury necessarily would violate its oath by "totally disregarding all those witnesses" is incorrect. Nevertheless, after considering the prosecutor's closing argument as a whole, we are convinced that this isolated statement did not prejudice Gist. Additional remarks leading up to the objectionable statement demonstrate that the prosecutor actually was telling the jury to evaluate all aspects of the witnesses' testimony to determine credibility and not to dismiss the testimony out of hand merely because the State's witnesses were drug addicts, dealers, and prostitutes. (Trial transcript, vol. 5, p. 872-882). Having reviewed the first challenged statement in context, we find no prosecutorial misconduct.
 {¶ 18} In the second statement at issue, the prosecutor told the jury: "Don't be fooled. You were chosen here. This is part of our justice system. Don't give the *Page 9 
Defendant something else to brag about. Stick to your chore that you have ahead of you. Look at the evidence and come back with a verdict of guilty on all counts." Defense counsel did not object to this statement, which Gist interprets as improperly urging a conviction to protect community values, preserve civil order, and deter future lawbreaking. Upon review, we see nothing objectionable about the statement. The prosecutor essentially urged the jury to do its job and to consider the evidence. Moreover, as noted by the State, multiple witnesses testified that they overheard Gist bragging about the murder. Therefore, the prosecutor's remark about not giving the defendant "something else to brag about" fell within the bounds of permissible argument. Consequently, we also reject Gist's claim that his attorney provided ineffective assistance by failing to object to the statement. The third assignment of error is overruled.
 {¶ 19} In his fourth assignment of error, Gist argues that the trial court erred in its instructions to the jury and also failed to require the prosecutor to "elect between offenses." The jury-instruction argument is two-fold. With regard to aggravated burglary, Gist claims the trial court erroneously informed the jury that it had to find a trespass with the purpose to commit "any criminal offense," without specifically identifying a particular offense. This argument lacks merit. Following the portion of the jury instruction quoted by Gist, the trial court added: "It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to commit murder." Therefore, the trial court did specify the criminal offense required to support an aggravated burglary conviction.
 {¶ 20} With regard to the aggravated murder charge, Gist challenges the following *Page 10 
instruction to the jury: "[I]f you find the State failed to prove beyond a reasonable doubt all of the essential elements of aggravated murder, then your verdict must be not guilty[.]" (Emphasis added). Gist contends the instruction should have read "any of the essential elements," not "all of the essential elements." Gist failed to bring this issue to the trial court's attention, however, and we find no plain error. In fact, we expressly rejected an identical argument in State v. Jones, Montgomery App. No. 20862, 2006-Ohio-2640, ¶ 59-60.
 {¶ 21} Finally, Gist contends the trial court should have required the State to elect one of the two aggravated murder and aggravated burglary charges to submit to the jury. We disagree. Although there was only one victim, Gist's indictment alleged different theories to support the two aggravated murder and aggravated burglary charges. Under such circumstances, the State was not required to elect which of the two aggravated burglary and aggravated murder charges to submit to the jury.State v. Goff, 82 Ohio St.3d 123, 135, 1998-Ohio-369; State v.Weind (1977), 50 Ohio St.2d 224, 236, judgment vacated in part on other grounds, Weind v. Ohio (1978), 438 U.S. 911. Gist's fourth assignment of error is overruled.
 {¶ 22} Having overruled each of Gist's assignments of error, we hereby affirm the judgment of the Montgomery County Common Pleas Court.
DONOVAN and VALEN, JJ., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1